**PACO TANKERS, Inc., v. WOOD TOWING CORPORATION.**

No. 6830.

District Court, E. D. Virginia,
Norfolk Division.

Feb. 7, 1945.

Barron F. Black, of Norfolk, Va., for libellant.

John W. Oast, Jr., of Norfolk, Va., for respondent.

HUTCHESON, District Judge.

On April 4, 1941, the steamer "Chilbar" was proceeding downstream in the James River, approaching a bend of approximately 80 degrees, at the lower end of Kingsland Reach, and the tug "E. V. McCaulley," proceeding upstream with a tow, was approaching the bend. The weather was good, with a southeasterly wind of approximately 13 miles per hour and the tide was ebbing, with a velocity of approximately 0.6 knot.

The "Chilbar" is an oil tanker 405 feet long, 51 feet beam and 28.6 feet deep. The "E. V. McCaulley" is a steam tug 96 feet 5 inches long, 20 feet 5 inches beam and 20 feet 8 inches deep, and at the time was towing seven empty flush deck sand barges. The barges varied in length from 95.2 feet to 118 feet, and in beam from 31.2 feet to 35 feet. The tow was made up with the barges in three tiers of two abreast, with one barge at the tail of the starboard row of barges. There is a conflict of testimony concerning the length of the hawser between the tug and the tow, the estimate varying from 35 feet to 360 feet. The barges in the respective tiers lay flush against each other, with hawsers holding them in that position, and the distance between the bows and sterns of the respective barges was about 3 feet. Accepting the minimum length of 35 feet of the hawser between the tug and barges, it will be seen that the tug and tow were of an overall length of more than 575 feet and the barges were of an average width of more than 65 feet. The channel at the point of the occurrence hereinafter related, was 200 feet wide, or perhaps slightly more.

Upstream from the bend was a gravel pit, to which the "E. V. McCaulley" was proceeding. Upon entering the stream at Drewry's Bluff the "Chilbar" proceeded at half speed, which was about 5 or 6 miles per hour, but slowed down in passing a dredge in the upper reach, at which time she blew a signal for the dredge, but this

was more than half a mile from the bend and was not a bend whistle. After passing the dredge she again proceeded at half speed in approaching the bend and sounded no other signal. When approaching the bend the "McCaulley" with tow was proceeding at 4 or 5 miles per hour.

At a point of around 2000 feet distance apart the vessels sighted each other and the "McCaulley" blew one whistle, initiating a port to port passage, which was answered by the "Chilbar." At the time the "Chilbar" sighted the "McCaulley" the barges had not come in sight around the bend.

From this point the evidence is in sharp conflict. Those called to testify from the "McCaulley" insist that the barges were on the extreme right-hand side of the channel, so close as to be brushing the bushes on the bank. Those called from the "Chilbar" insist that the barges were tailing across the channel and obstructed the passage of the "Chilbar." It is not denied that the "McCaulley" proceeded without further signals and that the "Chilbar" proceeded at half speed until reaching a point about opposite the end of the tow, at which time her engines were put at full speed, as contended by her, to give better steerage. The "Chilbar" came in contact with the edge of the channel on her starboard side and sustained injuries to her bottom, and the "McCaulley" proceeded upstream, ignorant of the grounding of the "Chilbar" and without damage to herself or tow.

In reaching a decision concerning the navigation of the respective vessels, there is to be borne in mind the respective lengths and widths of both; that each was approaching a dangerous curve of 80 degrees, or more, around which they could not see; that the curve was well known to the navigators of both vessels; that the channel was only about 200 feet wide; and that the occasion called for the exercise of a high degree of caution on the part of both. The "Chilbar" failed in the performance of her duty to sound a bend whistle and approached the bend at an admitted speed of 5 or 6 miles an hour. It was suggested that she could be more easily manoeuvered in the bend at this speed than if proceeding more slowly but this speed was maintained in approaching the bend, which, coupled with her failure to sound a bend whistle, reduced the time in which the "McCaulley" could have straightened up her tow had she been notified of the approach of another vessel. I therefore hold the "Chilbar" at fault in failing to signal for the bend and in approaching the bend at a speed excessive under the circumstances.

From the greater weight of the testimony, coupled with the conduct of the parties at the time and the interchange of hails testified to, which indicated the immediate reaction of the parties and constitutes a part of the res gestae, by which hails those navigating the "Chilbar" called upon the "McCaulley" to move her tow to the other side of the channel, I am of opinion that the tow of the "McCaulley" was improperly obstructing the channel and caused the "Chilbar" to manoeuver too far to her starboard and make contact with the bank. Had the "Chilbar" sounded an appropriate signal in approaching the bend and had she approached at a slower speed, the "McCaulley" would probably have been able to get her tow in line sufficiently early to avoid the accident. However, the "McCaulley" was equally at fault in approaching the bend with her tow tailing across her port side of the channel, and I hold her at fault for failure to have her tow on the proper side of the channel in approaching the bend; or if she found herself unable to control the movements of her tow for failure to give signals to warn vessels approaching around the bend while the channel was so obstructed. Had the tow been in proper place the "Chilbar" would have had sufficient room to pass, or if she (the Chilbar) had known of the obstruction she probably could have stopped or at the least reduced her speed and entered the bend with more caution.

Under the circumstances, each vessel was charged with, and had the right to expect from the other, a greater degree of caution than appears to have been exercised.

It is therefore my opinion that both vessels were at fault; that such faults contributed to the accident; and the damages should be divided between them.